[No. 3964–1. Division One. June 6, 1977.]

RICHARD DUFFY, *Appellant,* v. KING CHIROPRACTIC CLINIC, ET AL, *Respondents.*

*Kenneth R. St. Clair, Lane, Powell, Moss & Miller, David C. Lycette,* and *James B. Stoetzer,* for appellant.

*David Skellenger,* for respondents.

SWANSON, J.—Richard Duffy appeals from a summary judgment which dismissed his malpractice action against defendants Dr. Jim Caviezel, his wife, the King Chiropractic Clinic, and all of its members and/or partners and their wives, on the basis of RCW 4.16.350, the 1971 medical malpractice statute of limitations.[1]

[1]RCW 4.16.350 provides:

"Any civil action for damages against a hospital which is licensed by the state of Washington or against the personnel of any hospital, or against a member of the healing arts including, but not limited to, a physician licensed under chapter 18.71 RCW or chapter 18.57 RCW, chiropractor licensed under chapter 18.25 RCW, a dentist licensed under chapter 18.32 RCW, or a nurse licensed under chapter 18.88 or 18.78 RCW, based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last."

This statute was subsequently replaced in Laws of 1975, 2d Ex. Sess., ch. 56, § 1, to provide as follows:

"Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976 against:

"(1) A person licensed by this state to provide health care or related services, including, but not limited to, a physician, osteopathic physician, dentist, nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, pharmacist, optician, physician's assistant, osteopathic physician's assistant, nurse practitioner, or physician's trained mobile intensive care paramedic, including, in the event such person is deceased, his estate or personal representative;

"(2) An employee or agent of a person described in subsection (1) of this section, acting in the course and scope of his employment, including, in the event such employee or agent is deceased, his estate or personal representative; or

"(3) An entity, whether or not incorporated, facility, or institution employing one or more persons described in subsection (1) of this section, including, but not limited to, a hospital, clinic, health maintenance organization, or nursing home; or an officer, director, employee, or agent thereof acting in the course and scope of his employment, including, in the event such officer, director, employee, or agent is deceased, his estate or personal representative; based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission. Any action not commenced in accordance with this section shall be barred: *Provided,* That the limitations in this section shall not apply to persons under a legal disability as defined in RCW 4.16.190."

Duffy's assignments of error question (1) the constitutionality of RCW 4.16.350, (2) whether there is a genuine issue of material fact as to the time he discovered that his injuries were caused by defendants' wrongful act, (3) whether the *King Chiropractic Clinic* is a corporation which is not entitled to the benefit of RCW 4.16.350, and (4) whether it was error to consider the statute of limitations defense in the absence of an answer to the complaint.

Plaintiff contends essentially that because this legislation affects only the medical profession, it is special class legislation which violates the equal protection clauses of both the state and federal constitutions. We disagree.

■■ Our Supreme Court has recognized that the State may classify its citizens for various purposes, treating some differently than others, *Washington Kelpers Ass'n v. State*, 81 Wn.2d 410, 502 P.2d 1170 (1972), provided that such class legislation applies equally to all citizens within the class and that reasonable grounds exist for making a distinction between those within and those without a designated class. *Sonitrol Northwest, Inc. v. Seattle*, 84 Wn.2d 588, 528 P.2d 474 (1974). Within these limits, a wide measure of discretion is given the legislature, and its legislative determination cannot be overcome unless it is manifestly arbitrary, unreasonable, inequitable, and unjust. *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960). Significantly, RCW 4.16.350 is applicable to any member of the healing arts profession and does not single out one subgroup such as chiropractors for special treatment. There is also a rational basis for classifying members of the healing arts in one group, as apart from members of other professions, for the purpose of limiting medical malpractice actions. *See Chaffin v. Nicosia*, 261 Ind. 698, 310 N.E.2d 867 (1974). Our state appellate courts in *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969), and *Janisch v. Mullins*, 1 Wn. App. 393, 461 P.2d 895 (1969), invited legislative action to establish a line of demarcation limiting the delayed accrual of medical malpractice actions. More recently, in *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 222 n.2, 543 P.2d 338 (1975), our

Supreme Court commented on the desirability of such legislative action and cited RCW 4.16.350 as an example:

While important policy reasons support the accrual at discovery rule, we also recognize it may be desirable to place some outer limit upon the delayed accrual of actions in order to avoid an undue burden on potential defendants. The legislature may wish to enact a reasonable absolute limitation on actions like those in this case as it has in other contexts. *See* RCW 4.16.310, 4.16.350;
. . .

For these reasons, we must deny plaintiff's challenge to the constitutionality of RCW 4.16.350.

Plaintiff's second claim of error is directed to the trial court's finding that "There is no genuine issue as to any material fact in this action." Plaintiff contends that the date he discovered that defendants' negligent treatment caused his injuries is a genuine issue of fact which was not resolved by the evidence presented in support of defendants' motion for summary judgment. The date of such discovery is a material fact in applying the statute of limitations, plaintiff argues, because the portion of RCW 4.16.350 pertinent to his contention provides that the malpractice action "shall be commenced within . . . (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, . . ."[2]

The trial court concluded, after considering the unchallenged affidavits of defendant Caviezel and his attorney David Skellenger, plaintiff's answers to requests for admissions of fact, and the complaint, that

The complaint in this action was filed March 5, 1975, more than three years after the treatment which plaintiff received from defendants, and more than one year after plaintiff knew that defendants did or may have performed a wrongful act in the course of their treatment of him [,]

---

[2]Plaintiff concedes that more than 3 years passed from the date of the wrongful act, which took place prior to February 23, 1972, before suit was commenced on March 5, 1975.

and ordered the complaint dismissed.[3]

The undisputed facts establish that Duffy was treated by the defendants on several occasions during February 1972, and received his last treatment on February 23, 1972, which was performed by defendant Caviezel. Neither Caviezel nor any other partner or employee of the King Chiropractic Clinic saw Duffy professionally after that date. Duffy stated in his complaint that his cervical spine was injured while receiving treatment at the King Chiropractic Clinic. He placed the date his physicians discovered the fact and extent of his injuries at March 10, 1972. His physicians' discovery resulted in the immediate performance of a cervical fusion.[4] Duffy claimed that his injuries were caused by defendants' negligence consisting of improper manipulation of the cervical area of his spine. He admitted in response to requests for admissions of fact that "More than one year prior to March 5, 1975, plaintiff knew that defendants did perform, or may have performed, a wrongful act in the course of their treatment of him." On January 18, 1974, Duffy's attorney stated in a letter to defendant Caviezel that a claim would be made in Duffy's behalf against him; however, the complaint was not filed until March 5, 1975.

Plaintiff argues that simply because he admitted knowing more than 1 year prior to commencement of suit that the chiropractic treatment he received from defendants was

---

[3]The record furnished to us also includes the plaintiff's memorandum in answer to motion for summary judgment, but the order granting summary judgment dated June 20, 1975, from which the appeal is taken, identifies specifically the matters presented to the trial court for its consideration as noted and does not include plaintiff's memorandum even though it apparently was on file on April 14, 1975, according to the trial court clerk's filing stamp. While briefs of counsel presented to the trial court are not indispensible elements of the record on appeal in every case, *Transamerica Ins. Co. v. Parker Henry Glass Co.*, 7 Wn. App. 208, 499 P.2d 21 (1972), we can consider only the precise record presented to and considered by the trial court, no more and no less. *Harris v. Kuhn*, 80 Wn.2d 630, 497 P.2d 164 (1972).

[4]In Duffy's response to requests for admissions of fact, he stated he was unable to fix the date which his doctors discovered his injuries.

negligently administered, the trial court erroneously assumed that he also knew, or discovered more than 1 year prior to suit, that his injuries were caused by defendants' wrongful act. In so contending, plaintiff seeks to emphasize that the 1–year discovery provision of RCW 4.16.350 states the "discovery" that is determinative is the fact of causation and, not discovery or knowledge, of a "wrongful act." Duffy points out that while he admitted that he knew more than 1 year prior to commencement of suit that the defendants performed some wrongful act while treating him, he at no time conceded that he discovered the causative link between the wrongful act and the complained–of injuries more than 1 year prior to suit. Because it is the discovery of causation that triggers the 1–year portion of the statute of limitations, and not knowledge of a wrongful act, plaintiff contends that a material issue of fact remains unresolved—the date he discovered that his injuries were caused by defendants' wrongful act.

■ For purposes of a summary judgment procedure, we are mindful of the requirement that a reviewing court, as well as the trial court, must review material submitted for and against a motion for summary judgment in the light most favorable to the party against whom the motion is made. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972). When the evidence is so considered, if reasonable men might reach different conclusions, the motion should be denied. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963). Conversely, the motion should be granted if, from the evidence, reasonable men could reach but one conclusion. *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 421 P.2d 674 (1966).

Duffy relies primarily upon our recent decision in *Yerkes v. Rockwood Clinic*, 11 Wn. App. 936, 527 P.2d 689 (1974), to support his contention. While *Yerkes* is similar, it is distinguishable. During esophagus surgery, Yerkes' vagus nerve was severed. He alleged by affidavit that he did not discover any relationship between the damage to the vagus

nerve and his subsequent condition of chronic diarrhea until about 5 years later. We reversed the summary judgment of dismissal in *Yerkes* on the basis that reasonable men could differ as to whether the plaintiff should have known at an earlier date the connection between the claimed wrongful act and the complained–of condition. Given the unusual fact of a damaged nerve in the esophagus area and the not–so–unusual condition of diarrhea, it is hardly surprising that Yerkes as a reasonable man in such circumstances did not discover the causative connection sooner. It must be remembered that in the instant case, we have no affirmative assertion by the plaintiff, as in *Yerkes,* that the discovery took place within the time limitations of the statute. Further, Yerkes did not know the surgery involved wrongful acts until he discovered that it caused his diarrhea. Here, Duffy admitted that he knew that wrongful acts occurred during defendants' treatment of him.

To summarize, the evidence in the instant case demonstrates that the plaintiff knew more than 1 year prior to commencement of suit that (1) the defendants' treatment, consisting of manipulation of the cervical area, was negligently performed; (2) that his physicians discovered the fact and extent of his injuries on March 10, 1972, which resulted in the immediate performance of a cervical fusion; and (3) he consulted an attorney regarding a claim against Dr. Caviezel based on negligently performed treatment which his attorney believed would result in the filing of a claim for damages.

■ We stated in *Yerkes v. Rockwood Clinic, supra* at 941,

> In malpractice actions, our State has adopted the "discovery rule" in determining when the action accrues under RCW 4.16.010 and 4.16.080(2), *i.e.,* that the limitation period described in the statute of limitations begins to run *when the injured party knows, or in the exercise of due care, should have known of the alleged negligent conduct. Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969); *Denison v. Goforth,* 75 Wn.2d 853, 454 P.2d 218 (1969); *Fraser v. Weeks,* 76 Wn.2d 819, 456

P.2d 351 (1969); *Janisch v. Mullins,* 1 Wn. App. 393, 461 P.2d 895 (1969). (Italics ours.) We know of no reason why discovery of causation, as required by RCW 4.16.350, should not be determined by the same standard. From these undisputed facts, and while resolving all inferences arising from them most favorably to the plaintiff, we are unable to say that reasonable men could differ as to whether the plaintiff either discovered, or should have discovered, more than 1 year prior to commencement of suit, that his injuries were caused by defendants' wrongful act. Unlike the connection between the severance of the vagus nerve and plaintiff's diarrhea in *Yerkes,* the nexus between the treatment Duffy received in February of 1972, which he described as "improper manipulation of the cervical area," and the injuries requiring a cervical fusion immediately following the discovery of such injuries by his physicians on March 10, 1972, is so obvious and clear to a reasonable man that we must reject any contention to the contrary. The trial court correctly concluded that "there is no genuine issue as to any material fact in this action."

Plaintiff next attacks the judgment of dismissal of the King Chiropractic Clinic on the basis that the statute of limitations was improperly applied to benefit a private corporation organized for profit. He contends that the clinic is not a hospital licensed by the state and is excluded from the language of the statute. Again, we disagree. Only the caption in the record refers to the King Chiropractic Clinic as having corporate status. It recites that the clinic is a "partnership and/or a professional service corporation." Except for the reference in the caption, nothing of record suggests that the King Chiropractic Clinic is a corporation organized for profit. Assuming that it is a professional service corporation, organized under RCW 18.100.070, no change in the existing legal relationships between the professional and his client was intended by the statute permitting the organization of such a corporation. Further, RCW 4.16.350 applies to actions against members of the healing

arts for damages caused by their negligence, whether such professionals practice together as a partnership or as a professional service corporation.

■ Plaintiff's fourth and final argument focuses upon the defendants' failure to file an answer to his complaint. Plaintiff contends that because the statute of limitations is an affirmative defense, such a defense requires an affirmative pleading. He contends that the failure to file such an answer rendered their motion for summary judgment premature. A review of plaintiff's authorities indicates that they did not involve summary judgment proceedings, and are therefore inapposite. It is stated in 4 L. Orland, Wash. Prac. 249 (2d ed. 1968), "The defendant is not required to file an answer before moving for summary judgment." The federal courts are in accord with this position. *See, e.g., Connelly Foundation v. School Dist.* 461 F.2d 495 (3d Cir. 1972); *Lindsey v. Leavy,* 149 F.2d 899 (9th Cir. 1945), *cert. denied,* 326 U.S. 783, 90 L. Ed. 474, 66 S. Ct. 331 (1946); *Cordaro v. Lusardi,* 354 F. Supp. 1147 (S.D.N.Y. 1973). See also the generally thorough discussion of this problem in 6 J. Moore, *Federal Practice* § 56.17[4], at 56–735 (2d ed. 1976), and in the annotation appearing at 61 A.L.R.2d 341 (1958). The defense of the statute of limitations properly was raised by the motion for summary judgment.

Judgment affirmed.

FARRIS, C.J., and ANDERSEN, J., concur.

Petition for rehearing denied September 27, 1977.

Review denied by Supreme Court April 7, 1978.