**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| TACOMA SOUTH HOSPITALITY, LLC, and all others similarly situated throughout Washington State and the United States of America, | No. 55168-3-II |
| Appellants, | |
| v. | |
| NATIONAL GENERAL INSURANCE COMPANY, an insurance company, and INTEGON NATIONAL INSURANCE COMPANY, an insurance company, | PUBLISHED OPINION |
| Respondents. | |

CRUSER, J. – Tacoma South Hospitality, LLC (Tacoma South) filed an action under the Consumer Protection Act (CPA) against Integon National Insurance Company and National General Insurance Company (collectively Integon) after Integon's insured collided into a pylon sign advertising Tacoma South's hotel. Tacoma South argues that the trial court erred in dismissing its CPA claim by denying its motion for partial summary judgment and granting Integon's motion for summary judgment. Tacoma South alleged that the insurers engaged in an unfair claims settlement practice by conditioning payment on Tacoma South's agreement to release the insured from liability for excess damages. In addition, Tacoma South argues that the trial court abused its discretion when it denied its motion seeking recusal of the trial court judge, delayed ruling on class

certification until after it decided Integon's motion for summary judgment, and when it denied its motions to compel discovery.

We hold that the trial court did not abuse its discretion when it denied the motion seeking recusal. We further hold that because Tacoma South has not provided an adequate record for this court to review the trial court's order granting Integon's motion for summary judgment, we cannot review that error. Therefore, we do not reach Tacoma South's assignment of error regarding the trial court's order denying its motion for partial summary judgment. Finally, we hold that the trial court did not abuse its discretion when it deferred ruling on Tacoma South's motion for class certification, or when it denied Tacoma South's motions to compel discovery pending the parties' motions for a protective order.

Accordingly, we affirm.

## FACTS

### I. COLLISION AND SETTLEMENT NEGOTIATION

Cristian Altamirano was a guest staying in a hotel owned by Tacoma South. On the day of the collision, there had been a heavy snowfall, and the parking lot of the hotel was covered in accumulated ice and snow. As Altamirano pulled into the hotel parking lot, he lost control of his car and collided into the hotel's pylon sign.

Altamirano was insured by National General Insurance Company, which is underwritten by its member, Integon National Insurance Company. Altamirano's policy with Integon carried a property damage policy limit of $10,000.

Tacoma South submitted a repair estimate of $12,769 for the damaged sign to Integon. An adjuster for Integon responded by informing Tacoma South that there was a policy limit issue

because the property damage coverage was limited to $10,000, and he advised Tacoma South to contact its insurer so that Integon could arrange a settlement with Tacoma South's insurer. Tacoma South declined to involve its own insurer, stating that its insurer advised it to deal directly with Integon.

Thereafter, Integon offered Tacoma South $10,000 to pay the claim. Before it would issue a check, Integon required Tacoma South to sign a liability release as to any further claims against either Integon or Altamirano. When Tacoma South indicated that it would not sign the release, Integon explained that it could not pay more than $10,000 because of the policy limit.

Tacoma South retained an attorney to handle the claim and negotiations moving forward. Through its attorney, Tacoma South asserted that it did not seek more than $10,000 from Integon, but because Tacoma South believed Altamirano was liable, it did not want to release him from liability for damages above policy limits. Integon explained that because it owed a duty to its insured, it would not agree to issue its payment without the release. In addition, Integon clarified that requiring the release was a standard practice in settling claims that exceed property damage policy limits. An excerpt from Integon's claims handling manual instructs adjusters to require releases in property damage policy limits cases.

In two emails sent during the settlement discussion, Integon offered to contact Altamirano to determine whether Altamirano would agree to pay the claimed damages above the policy limits. Tacoma South did not directly respond to Integon's proposals to settle the matter by making an arrangement with Altamirano for the excess damages. Instead, Tacoma South declined to sign the release and filed suit alleging that Integon violated the CPA. After Tacoma South filed the CPA

suit, Integon contacted Tacoma South confirming that Altamirano agreed to pay excess damages and was hoping to devise a payment schedule.

## II. PROCEDURAL HISTORY

During the pretrial proceedings, Tacoma South filed a motion to compel discovery after Integon objected to several of Tacoma South's discovery requests. Integon responded to the first motion by highlighting the need for a protective order. The trial court deferred ruling on that motion until the parties conferred regarding the scope of the discovery requests, and it directed the parties to provide the court with a stipulated protective order, with any further disagreements regarding scope to be submitted electronically without the need for a hearing.

The parties were unable to agree to a stipulated order and Tacoma South renewed its motion to compel. The trial court denied Tacoma South's motion "at this time," and ordered Integon to file a motion for a protective order within one week of its ruling. Clerk's Papers (CP) at 186. Integon filed the motion as directed, and the trial court granted a protective order.[1]

Tacoma South filed a motion seeking class certification under CR 23. It asserted that every individual or entity involved in an auto collision with an Integon insured would be a putative class member given Integon's admission that it requires releases as a standard practice.

During the hearing on the motion for class certification, the trial court interrupted Tacoma South's argument and asked the parties whether it would make sense for the court to reserve ruling on the motion for class certification until Integon filed its motion for summary judgment. Tacoma South objected to the trial court's proposal, while Integon agreed that it would be appropriate for

---

[1] Integon's motion for a protection order and the trial court's order granting the protective order are not designated in the clerk's papers and are not a part of our record.

the court to defer its ruling. The trial court acknowledged that "this is a case that potentially would be certified for a class action," but because Integon disputed the underlying claim, it would reduce the cost of litigation to first address a motion for summary judgment. Verbatim Report of Proceedings (VRP) (Feb. 7, 2020) at 10. Tacoma South expressed concern that a deferred decision on class certification would prevent its case from moving forward because Integon could delay filing its motion. The trial court responded that it anticipated Tacoma South's concern and set a deadline by which Integon could either file its motion or the trial court would revisit the class certification issue.

On reviewing the superior court's electronic filing system records, Tacoma South noticed an entry indicating that Integon scheduled an unconfirmed "11:39 Exparte Action Mail," and that there was an ex parte order held. CP at 210. Based on this entry, Tacoma South filed a motion seeking recusal of the trial court judge and vacation of several adverse orders on the grounds that the trial judge's partiality could reasonably be questioned following his alleged surreptitious contact with Integon. Tacoma South also argued that the trial judge covertly changed the record because Tacoma South accessed the same electronic system several days later, but the outcome designation changed to state "Ex-Parte w/o Order Held." *Id.* at 215.

Integon denied having any ex parte contact with the trial judge. Integon explained that the entry was likely due to several filings it submitted electronically on the same date as the alleged ex parte contact. The trial court found that based on "objective and subjective evidence," the trial judge did not engage in an ex parte contact with Integon. *Id.* at 280. The trial court denied Tacoma South's motion for recusal.

Thereafter, Tacoma South filed a motion for partial summary judgment, arguing that it established each necessary element of its CPA claim based on Integon's violations of regulations that govern unfair claims settlement practices in insurance, and that it was entitled to judgment in its favor as a matter of law. The only remaining issue to resolve, Tacoma South argued, was damages. The trial court denied Tacoma South's motion for partial summary judgment.

Integon also filed a motion for summary judgment. In ruling on the motion for summary judgment, the trial court considered Integon's motion and attached declarations and exhibits, Tacoma South's response, and Integon's reply and attached declarations and exhibits. The trial court granted Integon's motion, dismissing Tacoma South's claims. Tacoma South appeals.

## DISCUSSION

## I. MOTION FOR RECUSAL

Tacoma South contends that the trial judge violated several canons of the Code of Judicial Conduct (CJC), and that as a result, his impartiality could reasonably be questioned. Because of the appearance of partiality, Tacoma South asserts that the trial judge abused his discretion in denying Tacoma South's motion to recuse and vacate orders. We disagree.

A. LEGAL PRINCIPLES

Due process entitles parties in both civil and criminal cases to "'an impartial and disinterested tribunal.'" *Tatham v. Rogers*, 170 Wn. App. 76, 90, 283 P.3d 583 (2012) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)). A judge is required to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." CJC Canon 2.11(A). To determine whether the judge's impartiality might reasonably be questioned, courts employ an objective test that assumes "'a

6

reasonable person knows and understands all the relevant facts.'" *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988)).

We begin with the presumption "that a trial judge properly discharged his/her official duties without bias or prejudice." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). To overcome this presumption, the party raising the challenge "must provide specific facts establishing bias." *Id*. Actual prejudice need not be proved; a mere suspicion of partiality may be enough to warrant recusal. *Sherman*, 128 Wn.2d at 205. We will review a trial judge's decision regarding recusal for an abuse of discretion. *State v. Davis*, 175 Wn.2d 287, 305, 290 P.3d 43 (2012), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

B. APPLICATION

Tacoma South argues that the trial judge engaged in an ex parte communication with Integon, in violation of CJC 2.9, thus raising a question of the trial judge's partiality in this case. Tacoma South's claim is without merit.

With several exceptions, CJC 2.9(A) provides that "A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter." In sole support of its claim that Integon and the trial judge engaged in an improper ex parte communication, Tacoma South points to a printed copy of the Pierce County Superior Court's electronic docketing system, which stated that on March 31, counsel for Integon scheduled an unconfirmed "11:39 Exparte Action Mail," and that the outcome initially was "Ex-Parte w/ Order Held." CP at 210. Tacoma South suggests further that the trial judge changed the record covertly

because when Tacoma South looked at the same electronic system several days later, the outcome designation changed to "Ex-Parte w/o Order Held." *Id.* at 215.

Integon's counsel denied having any ex parte contact with the trial judge and stated that the notation could refer to electronic documents it filed on that date that included a proposed order. The trial court also found that there was no ex parte contact between the trial judge and Integon based on "objective and subjective evidence." *Id.* at 280. Tacoma South has not provided any additional evidence that an ex parte contact actually occurred.

Tacoma South argues that the trial court abused its discretion because, as the trial court stated in its order, it considered subjective evidence, whereas the test for impartiality is objective. Tacoma South's contention is without merit because, as the trial court's order specified, the trial court considered subjective evidence in evaluating whether the ex parte contact occurred at all. It did not state that it considered its own subjective impression as to whether its impartiality might reasonably be questioned.

The electronic filing report, without more, is insufficient evidence to raise even a mere suspicion of partiality. *See Sherman*, 128 Wn.2d at 205. Receipt of an ex parte communication does not necessarily compel recusal. *Davis*, 175 Wn.2d at 307. Instead, an ex parte communication is "problematic" and may require recusal where the communication "revealed or implied a bias toward one party," or where the communication indicated that the trial judge's "future rulings in the case would be affected." *Davis*, 175 Wn.2d at 307. There is no evidence that the alleged ex parte action, even if it did occur, in any way implied a bias in favor of Integon or otherwise undermined the validity of the trial judge's future rulings. *See id.* Tacoma South's contentions regarding impropriety in the communications are entirely speculative and would not compel a

reasonable person to question the trial court judge's impartiality. On this evidence, the trial court did not abuse its discretion in denying Tacoma South's motion to recuse. *See id*. at 305.[2]

## II. INTEGON'S MOTION FOR SUMMARY JUDGMENT

Tacoma South argues that the trial court erred in granting Integon's motion for summary judgment, thereby dismissing Tacoma South's CPA claim. Because Tacoma South failed to perfect the appellate record, which is a necessary predicate to our ability to review this issue, we decline to address this claim. Accordingly, we affirm the trial court's ruling granting Integon's motion.

The appellant bears the burden of perfecting the record on appeal so as to ensure that the reviewing court is apprised of all necessary evidence to decide the issues presented. *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) ("The party presenting an issue for review has the burden of providing an adequate record to establish such error.") (citing RAP 9.2(b)); *see also Yorkston v. Whatcom County*, 11 Wn. App. 2d 815, 824, 461 P.3d 392 (2020). Where the appellant has failed to meet its burden of perfecting the record, the reviewing court may decline to address the merits of an issue. *Sisouvanh*, 175 Wn.2d at 619. Barring compelling circumstances,

---

[2] Tacoma South separately asserts that recusal was necessary because the trial judge violated CJC 2.6(A), requiring the judge to ensure a right to be heard according to law, and CJC 2.7, requiring the judge to hear and decide matters assigned to the judge, when the judge deferred deciding Tacoma South's motion to compel discovery and ruled that the discovery issue could be resolved without a hearing. In addition, Tacoma South argues that the trial judge violated CJC 2.2, requiring impartiality and fairness, CJC 2.3, prohibiting the judge from manifesting bias or prejudice, and CJC 2.6(B), prohibiting the judge from coercing parties into a settlement, when it effectively suggested that Integon file a motion for summary judgment during the hearing on class certification. Tacoma South did not include either of these arguments in its motion to recuse and raises these arguments for the first time on appeal. Because a claim challenging the appearance of fairness is not considered a "constitutional" claim under RAP 2.5(a)(3), an appellate court will generally decline to consider the issue for the first time on appeal. *See State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998) ("An appearance of fairness objection has been deemed waived when not raised in the trial court."); *see also State v. Morgensen*, 148 Wn. App. 81, 91, 197 P.3d 715 (2008). We therefore decline to consider these additional allegations.

however, courts should avoid deciding a case based on noncompliance with the rules of appellate procedure. *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 693, 959 P.2d 687 (1998).

On reviewing Tacoma South's assignment of error challenging the trial court's decision to grant summary judgment in favor of Integon, we sit in the same position as the trial court. *See Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 453, 403 P.3d 58 (2017). Our scope of review is limited to evidence and issues called to the attention of the trial court before the order on summary judgment was entered. RAP 9.12.

Here, due to Tacoma South's failure to perfect the record, we are unable to carry out our role on review of a motion for summary judgment. *See LeBeuf v. Atkins*, 93 Wn.2d 34, 36, 604 P.2d 1287 (1980) ("In an appellate review of a summary judgment of dismissal, the reviewing court must have before it the precise record considered by the trial court."). The trial court granted Integon's motion for summary judgment after considering Integon's motion and supporting declarations and exhibits, Tacoma South's response, and Integon's reply and supporting declarations and exhibits. But Tacoma South did not designate the motion for summary judgment, responsive pleadings, or the attached declarations and exhibits as clerk's papers.[3] As a result, we cannot review the issues and evidence that were presented before the trial court anew to determine whether the trial court reached its decision in error because Tacoma South did not provide the information on which that decision was based. *See* RAP 9.12; *see also Killian*, 189 Wn.2d at 453.

---

[3] During oral argument, Tacoma South explained that it did not designate the motion, attachments, and responsive pleadings as clerk's papers because the trial court did not enter factual findings or conclusions of law when it granted Integon's motion. In making this assertion, Tacoma South wholly misunderstands a court's role on summary judgment. In ruling on a motion for summary judgment, courts do not resolve factual disputes but rather determine whether a genuine issue of material fact exists. *Jacobsen v. State*, 89 Wn.2d 104, 110, 569 P.2d 1152 (1977).

Tacoma South's failure to perfect the record on appeal with respect to the trial court's order granting Integon's motion for summary judgment amounts to more than mere technical noncompliance with the rules of appellate procedure. *See Rhinevault,* 91 Wn. App. at 693. Instead, the failure to provide an adequate record in this instance wholly forecloses our ability to evaluate the complained of error. Consequently, we decline to review this claim.

Because we affirm the trial court's order granting Integon's motion for summary judgment, thus leaving the trial court's order dismissing Tacoma South's complaint intact, we do not reach Tacoma South's assignment of error challenging the trial court's order denying its motion for partial summary judgment.[4,5]

---

[4] Tacoma South argues that the trial court abused its discretion when it reserved ruling on its motion for class certification until after it decided Integon's motion for summary judgment. We disagree because a trial court has discretion "for purposes of judicial economy, to delay ruling on a motion for class certification until after hearing dispositive motions." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 807, 123 P.3d 88 (2005); *see also Chavez v. Our Lady of Lourdes Hosp.*, 190 Wn.2d 507, 515 n.6, 415 P.3d 224 (2018). Here, the trial court acted in the interest of judicial economy and well within its discretion when it reserved ruling on class certification so that it could determine viability of the underlying claim. *See Sheehan*, 155 Wn.2d at 807. In addition, because we affirm the summary judgment order dismissing Tacoma South's CPA claim, "the class certification issue continues to be moot." *Id.*

[5] Tacoma South argues that the trial court abused its discretion when it denied Tacoma South's motions to compel discovery. We disagree because the trial court did not foreclose Tacoma South's ability to obtain its requested discovery in either challenged order. Instead, the trial court directed the parties to work out a stipulated protective order regarding the scope of discovery, and later deferred resolving the disputed discovery issues until after Integon submitted its own motion for a protective order. To the extent that Tacoma South argues that the trial court abused its discretion in denying its motions to compel by improperly delaying resolution of the discovery dispute, the record before us lacks any indication that Tacoma South objected to the delay. Consequently, that error is unpreserved, and we decline to reach it. RAP 2.5(a).

ATTORNEY FEES

Both Tacoma South and Integon request attorney fees on appeal. We deny Tacoma South's request and grant Integon's request.

A. TACOMA SOUTH'S REQUEST FOR ATTORNEY FEES

Tacoma South requests attorney fees on appeal under RAP 18.1 and RCW 19.86.090. A litigant that brings a successful CPA action is entitled to recover expenses and attorney fees on appeal. RCW 19.86.090; *Svendsen v. Stock*, 143 Wn.2d 546, 560, 23 P.3d 455 (2001). Because Tacoma South does not prevail in its CPA claim, we decline to award Tacoma South attorney fees on appeal.

B. INTEGON'S REQUEST FOR ATTORNEY FEES

Integon requests attorney fees on appeal under RAP 18.9 for having to defend a frivolous appeal. "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Tacoma South's failure to perfect the record precluded our ability to address Integon's successful summary judgment motion and thereby foreclosed any possibility of reversal. Thus, under the unique circumstances of this case, Tacoma South's appeal is frivolous. We therefore award fees to Integon for having to defend against a frivolous appeal in an amount to be determined by our court commissioner.

In addition, Integon requests fees based on RCW 4.84.080, which provides an award of costs as attorney fees to the prevailing party "[i]n all actions where judgment is rendered in the . . . court of appeals." RCW 4.84.080(2). Under the statute, the prevailing party is awarded $200. *Id.* Successful litigants in a civil action "'may recover only such attorney fees as the statute or

agreement of the parties provides.'" *Gipson v. Snohomish County.*, 194 Wn.2d 365, 376, 449 P.3d 1055 (2019) (quoting *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 102, 111 P.2d 612 (1941)). Because Integon has prevailed on appeal, we award costs as attorney fees to Integon. *See id.*

CONCLUSION

With regard to Tacoma South's motions seeking recusal of the trial judge and vacation of the trial judge's rulings, we hold that the trial court did not abuse its discretion because there was insufficient evidence of nefarious ex parte contact to cause a reasonable person to question the trial court's partiality. Because Tacoma South failed to set forth an adequate record to allow us to review the trial court's order granting Integon's motion for summary judgment on the merits, we hold that the trial court's order stands. In addition, we hold that the trial court did not abuse its discretion when it reserved ruling on Tacoma South's motion for class certification prior to deciding Integon's motion for summary judgment. Finally, we hold that the trial court did not abuse its discretion in managing discovery when the trial court deferred resolving the discovery dispute until it was presented with a motion for a protective order.

No. 55168-3-II

Accordingly, we affirm.

CRUSER, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.